EVERETT SLATER, *An Infant, etc. v.* UNITED FUEL GAS COMPANY.

(No. 9467)

Submitted September 22, 1943. Decided October 19, 1943.

*Harold A. Ritz, R. K. Talbott* and *B. J. Pettigrew,* for plaintiff in error.

*Lillian S. Robertson, J. Blackburn Watts* and *L. F. Poffenbarger,* for defendant in error.

LOVINS, JUDGE:

This case comes here on a writ of error and supersedeas to a judgment of the Circuit Court of Kanawha County rendered in an action of trespass on the case to recover damages for personal injuries wherein Everett Slater is

plaintiff and United Fuel Gas Company is defendant. A jury returned a verdict in favor of the plaintiff for two thousand five hundred dollars and the court, after overruling a motion to set aside the verdict and grant defendant a new trial, entered judgment for the amount of the verdict.

Plaintiff, a boy fourteen years of age, suffered severe burns on June 11, 1942, while in or near the waters of the left fork of Tuppers Creek, approximately three hundred forty-five feet downstream from a point at which defendant's ten-inch high pressure gas pipe line crosses the stream. Plaintiff's injuries were occasioned by a sudden conflagration which apparently commenced at or near where plaintiff was injured, and extended downstream therefrom about seventeen hundred feet, and upstream (about three hundred forty-five feet) to defendant's pipe line, it being estimated that the flames thereof were from forty to seventy-five feet high. The creek is a small shallow stream, bordered with overhanging trees and brush, and flows in a westerly direction in close proximity to a public road. The stream consisted of small connected pools, plaintiff being in or near a pool when the fire occurred. Children in the vicinity of the pipe line were wont to play in the stream and along its banks, although defendant denies knowledge of that fact.

Defendant maintained at intervals along its pipe line devices known as "drips" and "siphons" for the elimination of moisture in the line. A "drip" is a mechanism which hastens the condensation of moisture and collects the liquid in a reservoir from which it is drained into a storage tank. One such storage tank, with a capacity of one hundred barrels (3600 gallons), is situate on the slope of the hill about two hundred feet north of the point where defendants pipe line crosses the creek. A siphon is a manually operated valve opening at low points in a pipe line where liquids not condensed by drips accumulate, one being located in defendant's pipe line about four feet from the waters of the stream, which was opened

daily by defendant's employee, and usually kept open about twenty minutes. At the time of the fire the siphon so located had been open about ten minutes, and it was estimated that approximately twenty gallons of liquid had been released therefrom, said liquid being nearly equal quantities of gasoline and water.

Defendant's evidence tends to show that the liquid released from this siphon was blown on and against the bank of the stream, but plaintiff's evidence tends to show that it was released directly into the water, plaintiff's contention being that the gasoline which caught fire was the gasoline discharged from the siphon and into the water. Defendant maintains that the gasoline which caused the fire came from defendant's storage tank near the drip, the gasoline having been released therefrom by people in the neighborhood, including plaintiff and members of his family, engaged in purloining gasoline. Defendant shows that it had caused some sixteen expensive locks to be placed on the release valve of its storage tank, and that these locks had been broken by persons unknown to defendant, and gasoline allowed to drain from its storage tank. Gasoline so released from the tank would flow one hundred sixty-two feet downhill to a ditch along the north side of the road, thence westerly one hundred fifty-eight feet to a culvert under the road, and thence into the creek at a point two hundred ten feet upstream from where plaintiff was injured. It appears that in the two days immediately preceding the fire between forty and fifty barrels of gasoline had escaped from the tank, but there is no evidence as to how much, if any, thereof flowed into the stream, or remained along the drainage lines from the storage tank to the outfall from the culvert into the brook.

All of the errors assigned do not merit or require consideration. We consider only the assignments of error relied on and discussed in the briefs of the litigants, which may be summarized as follows: (a) that plaintiff did not prove his case by a preponderance of the evidence; (b)

that the trial court erred in giving instruction No. 1, requested by plaintiff, and in refusing instruction No. 16 offered by defendant; (c) that it was error to admit, over objection of defendant, allegedly illegal and prejudicial testimony; and (d) that the motion to set aside the verdict and grant the defendant a new trial should have been sustained.

Defendant argues that all of plaintiff's testimony should have been excluded from the jury, or that peremptory instruction No. 1, requested by defendant, should have been given. The position assumed by the defendant that the extent and magnitude of the fire militated against plaintiff's theory that it was caused by gasoline discharged from the siphon, and that it is more probable that the fire was caused by gasoline drained from the storage tank of defendant which entered the stream through the culvert and was released from the tank by persons without the knowledge or consent of defendant. It may be doubted that a fire of the magnitude and extent indicated by the testimony could have been caused by the fluid discharged from the siphon, in view of the fact that only twenty gallons of fluid were discharged therefrom. It is observed, that the record shows that the fire was confined entirely to the stream and did not go through the culvert, along the drainage lines to the storage tank, and, further, that the siphon was opened daily. As to daily opening of the siphon, it is shown that no gasoline was discharged from it prior to the day of the fire. The absence of gasoline on such prior occasions is not accounted for nor explained. We cannot say that the plaintiff's theory as to the origin of the fire is incredible or improbable. The evidence showing that the fire extended to the point where the gasoline was being discharged from the siphon and that it did not burn in the culvert and along the drainage lines was for consideration and evaluation by the jury. The rate of flow of the stream, which would carry the gasoline in liquid form, and the direction of the air currents, which would carry it if vaporized, are not shown.

The rule relating to balance of probabilities is but another way of stating that where plaintiff does not prove his case by a preponderance of the evidence, he fails. *C. & O. Ry. Co.* v. *Whitlow*, 104 Va. 90, 51 S. E. 182. The proof appearing in this record is such that there may be honest, reasonable, and different conclusions as to the source of the inflammable matter which caused the fire. The extent of the fire and the height of the flames was estimated and for that and other reasons hereinabove stated we do not think such facts are controlling. In our opinion the court did not err in refusing to strike the evidence of plaintiff and direct a verdict for defendant, nor was there error in the court's refusal to give defendant's instruction No. 1.

Plaintiff's instruction No. 1 assumed that plaintiff and other persons frequented the vicinity of the fire, stated in abstract form the defense of contributory negligence, and ignored defendant's theory that the gasoline which caused the fire escaped from the storage tank. Defendant objected to plaintiff's instruction No. 1, assigning as specific grounds therefor that the instruction informed the jury that the plaintiff and others "were known to frequent the vicinity of the drip for pleasure and other resort". It is clearly established by the testimony of eight witnesses that children frequently played in and along the stream, and nothing to the contrary appears in this record. We do not approve an instruction which assumes the existence of a fact, but where, as in this instance, the fact assumed in the instruction was proved and countervailing evidence was not offered, no prejudice to the party so objecting results. If the plaintiff and others did not, in fact, frequent the place where the fire occurred, it was incumbent on defendant to prove that fact, if it desired to avail itself thereof. Such proof was not offered.

It is urged in brief and argument that plaintiff's instruction No. 1 does not contain a sufficient factual hypothesis to support the conclusions conditionally **authorized** therein. It is true that the instruction is binding and in-

structions of this kind have been disapproved by this Court. It may be said that the instruction here under consideration is open to serious criticism for lack of concrete factual statement which should constitute a sufficient major premise for the finding of the jury conditionally authorized, but no objection was made on that ground. In civil cases, only specific grounds of objection to instructions are considered. Rule VI (e), Rules of Practice and Procedure for Trial Courts, 116 W. Va. lxiii; *Deitz* v. *County Court,* 122 W. Va. 296, 8 S. E. 2d 882; *Bragg* v. *C. I. Whitten Transfer Co.,* 125 W. Va. 722, 26 S. E. 2d 217. Defendant's theory, that gasoline which drained from its storage tank caused the fire, should not have been disregarded in plaintiff's instruction No. 1. Assuming, without holding, that defendant's hypothesis as to the origin of the fire should have been concretely expressed in instruction No. 1, the absence thereof was not assigned as ground of objection and will not be considered now. Rule VI (e), *supra; Dietz* v. *County Court, supra; Bragg* v. *C. I. Whitten Transfer Co., supra.*

Defendant tendered twenty-two instructions. The court refused twelve of the instructions so tendered, which is assigned as error, but only the refusal of two such instructions is relied on in defendant's brief. Defendant's instruction No. 1, refused by the court, was a peremptory instruction, and what we have hereinbefore said with reference to the plaintiff's evidence showing a *prima facie* case disposes of the allegedly erroneous ruling in refusing the peremptory instruction. There was no error in such refusal. But the refusal of instruction No. 16, offered by defendant, presents a more serious question. The court, at the instance of defendant, gave instruction No. 15, which presented the defendant's theory that the gasoline which caused the fire came from the storage tank, and that no action of the defendant caused the gasoline to escape therefrom and flow into the stream. Instruction No. 16, refused by the court, presented a similar theory, and, in addition, told the jury that it should find for the defend-

ant, even though the jury may believe that defendant was negligent in opening the siphon and blowing gasoline therefrom. Plaintiff objected to instruction No. 16 on the ground that the same principle of law was set out in defendant's instruction No. 15; that instruction No. 16 ignored the element of plaintiff's knowledge of gasoline in the stream; and that even though the gasoline escaped from the storage tank two days before the fire, it was defendant's duty to exercise care to prevent injury to the plaintiff.

The difference between instructions Nos. 15 and 16, just indicated, renders the plaintiff's first ground of objection untenable. The second ground of objection is not applicable for the reason that if the breach of duty by defendant in opening its siphon did not result in injury to the plaintiff, the injury having been caused by the independent act of some third party, there is no liability on defendant regardless of plaintiff's knowledge or lack thereof that gaoline was in the stream. The last ground of objection is not well taken. There is no allegation in plaintiff's declaration charging defendant with negligence in allowing gasoline to escape from the storage tank. Plaintiff and defendant had conflicting hypotheses as to the source of the gasoline which caused the fire. "Where conflicting theories of a case are presented by the evidence, each party is entitled to have his view of the case presented to the jury by proper instruction". *Morris* v. *Parris*, 110 W. Va. 102, 157 S. E. 40. It was error to refuse defendant's instruction No. 16.

The court admitted in evidence, over defendant's objection, part of a hospital chart which showed that plaintiff stated, "that while playing over a creek someone must have lighted a match and set ablaze natural gas". The chart was identified by an interne in the hospital, to which plaintiff was admitted, as being in his own handwriting, but he is not certain who furnished the factual background for the statement, or when it was made. A physician in attendance on the plaintiff, over defendant's

objection, was permitted to testify that he asked plaintiff what caused the accident, and that plaintiff replied that he did not know. The entry of the hospital chart may be either hearsay evidence or a self-serving declaration. If the interne obtained his information from someone other than plaintiff, it is hearsay: if plaintiff informed him, it is self-serving as well as hearsay. In either event the testimony of the interne was inadmissible as was the testimony of the physician. *Charlton* v. *Pancake*, 98 W. Va. 363, 127 S. E. 70; *Dickinson Fuel Co.* v. *Glenn Coal Co.*, 103 W. Va. 366, 137 S. E. 539; *Scott* v. *Railway Co.*, 104 W. Va. 461, 140 S. E. 329. But it is contended by the plaintiff that even though inadmissible, the testimony was not prejudicial to defendant. Illegal evidence admitted over objection is presumed to be prejudicial, but if it clearly appears that the objecting party suffered no prejudice a verdict will not be set aside on account of admitting such evidence. *Taylor* v. *B. & O. R. R. Co.*, 33 W. Va. 39, 10 S. E. 29; *Neeley* v. *Town of Cameron*, 71 W. Va. 144, 75 S. E. 113; *Hubbard* v. *Assurance Society*, 88 W. Va. 361, 106 S. E. 786.

It therefore becomes necessary to determine whether the evidence of the hospital interne and physician prejudiced the defendant. Plaintiff stated that he did not know what caused the fire, and there was evidence to show that plaintiff had no knowledge of gasoline being in the stream. Unless the plaintiff knew, or should have known of the presence of gasoline, the plaintiff's act of lighting a match would not constitute contributory negligence. Defendant introduced evidence which tended to show that plaintiff knew gasoline was discharged from the siphon into or near the stream, and that the plaintiff threw a lighted match into the water. The testimony of the hospital interne and physician gave the plaintiff's testimony support and weakened the conflicting evidence of defendant. In such situation it would be mere speculation to say that such testimony was or was not prejudicial to defendant. It suffices to say that the presumption of

prejudice remains, as it is not clear that the jury's verdict was unaffected thereby.

The court should have sustained defendant's motion to set aside the verdict and grant it a new trial for the reasons that the court's rulings in refusing to give defendant's instruction No. 16 and in admitting illegal and prejudicial testimony of the hospital interne and physician are erroneous.

The judgment of the Circuit Court of Kanawha County, for the reasons above indicated, is reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*