415 S.E.2d 449

**STATE of West Virginia, Plaintiff
Below, Appellee,**

v.

**Estil GREEN, Defendant
Below, Appellant.**

No. 20174.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 21, 1992.

Decided March 5, 1992.

commit grand larceny. Although indicted for both conspiracy to commit grand larceny and grand larceny, Mr. Green was convicted by a jury verdict on May 18, 1990, of the conspiracy charge only. He was subsequently sentenced by order dated July 13, 1990, to one-to-five years in the West Virginia Penitentiary.

The conviction arose out of the theft of a Gravely tractor, valued at approximately $4,600, from a residence in Calhoun County in September, 1989. Although promptly reported and initially investigated by the state police, the crime remained unsolved until the emergence of a confidential informant later that fall. After the informant came forward, the investigation was transferred to Trooper David Garrett. As a result of the investigation, Mr. Green was arrested and indicted in November, 1989.

During the trial, there was conflicting testimony regarding the actual theft of the tractor. Mr. Green and another witness testified that Ralph Ackley had borrowed a truck from Mr. Green in order to visit his children and that, when he returned, he had the tractor in the truck. Mr. Ackley testified that Mr. Green and Billy Barker went out in the truck one evening and returned with the tractor.

It is undisputed that the next day, Mr. Green, Mr. Ackley, and Billy Barker set out to sell the tractor, although there is conflicting evidence regarding who was in charge of the sale negotiations. Ultimately, they sold the tractor to Bobby Buzzard for $500. Mr. Buzzard was given a receipt signed by himself, his wife, Mr. Green, and Mr. Ackley, who signed as Ralph Butler. Mr. Ackley testified that he signed a false name because he was afraid of getting into trouble.

F. John Oshoway, Grantsville, for appellant.

Joanna I. Tabit, Deputy Atty. Gen., Charleston, for appellee.

PER CURIAM:

This case is before us on appeal by Estil Green from his conviction in the Circuit Court of Calhoun County for conspiracy to

Mr. Green assigns six errors on appeal. Although we find no reversible error in this case, we will discuss each assignment.

I.

■ Mr. Green asserts that the trial court erred in refusing to order disclosure of the identity of the confidential informant. He contends that he was prejudiced

by the failure to disclose, although he was unable to specifically identify the way in which he was prejudiced because he did not know the identity of the informant.

■ In Syllabus Point 3 of *State v. Tamez*, 169 W.Va. 382, 290 S.E.2d 14 (1982), this Court outlined the procedure to be followed when a defendant seeks disclosure of the identity of a confidential informant:

"When the State in a criminal action refuses to disclose to the defendant the identity of an informant, the trial court upon motion shall conduct an *in camera* inspection of written statements submitted by the State as to why discovery by the defendant of the identity of the informant should be restricted or not permitted. A record shall be made of both the in court proceedings and the statements inspected *in camera* upon the disclosure issue. Upon the entry of an order granting to the State nondisclosure to the defendant of the identity of the informant, the entire record of the *in camera* inspection shall be sealed, preserved in the records of the court, and made available to this Court in the event of an appeal. In ruling upon the issue of disclosure of the identity of an informant, the trial court shall balance the need of the State for nondisclosure in the promotion of law enforcement with the consequences of nondisclosure upon the defendant's ability to receive a fair trial. The resolution of the disclosure issue shall rest within the sound discretion of the trial court, and only an abuse of discretion will result in reversal. *W.Va. R.Crim.P.* 16(d)(1)."

The trial court here followed the procedure outlined in *Tamez*. Upon opposition by the prosecution to the defendant's motion for disclosure, the court made an *in camera* inspection of the prosecution's written statement. Having ruled against disclosure, the court sealed the statement to preserve it for appeal. The statement was subsequently unsealed by order of the circuit court dated September 5, 1991. We thus find no procedural error in the refusal to order disclosure.

■ As noted in Syllabus Point 3 of *Tamez*, the trial court must balance the interest of the prosecution in nondisclosure for promotion of law enforcement with the defendant's right to a fair trial. In reviewing the prosecution's statement in opposition to disclosure, it appears to us that the trial court here arrived at the proper conclusion. The need of the State for anonymity was very high, in light of ongoing criminal investigations involving the same informant. The prejudice to the defendant, on the other hand, was quite low, because the informant, Mr. Ackley, was already scheduled as a State's witness. The witness list was known to the defendant in advance of trial. Because the trial court's ruling on this matter does not constitute an abuse of discretion, we decline to reverse on this ground.

## II.

Mr. Green next contends that the trial court erred in restricting the scope of cross-examination of Mr. Ackley and Trooper Garrett. Mr. Green sought to elicit from Mr. Ackley any conversation he may have had with Trooper Garrett other than the one detailed in a written statement dated November 4, 1989.

■ In Syllabus Point 4 of *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982), we outlined rules of cross-examination:

"Several basic rules exist as to cross-examination of a witness. The first is that the scope of cross-examination is coextensive with, and limited by, the material evidence given on direct examination. The second is that a witness may also be cross-examined about matters affecting his credibility. The term 'credibility' includes the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness' character. The third rule is that the trial judge has discretion as to the extent of cross-examination."

We defined the standard of review for alleged errors dealing with cross-examination in the Syllabus of *State v. Wood*, 167

W.Va. 700, 280 S.E.2d 309 (1981), where we stated:

" 'The extent of the cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in case of manifest abuse or injustice.' Syl. pt. 4, *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956)."

 Inconsistent statements made by Mr. Ackley are clearly subject to cross-examination for purposes of impeachment under the rules set forth in *Richey*. The defendant's attorney was able to get into evidence on cross-examination the November 4, 1989 statement given by Mr. Ackley to Trooper Garrett. He was able to cross-examine Mr. Ackley about inconsistencies between the statement and his trial testimony. In response to defense attorney's cross-examination about any earlier conversations that he may have had with Trooper Garrett, Mr. Ackley testified that he had been questioned a couple of times, but that he did not think he had said anything to Trooper Garrett. When defense counsel attempted to find out where the questioning occurred, the prosecutor objected on the ground that none of these matters had been covered in direct examination. Under these circumstances, the trial court was correct in refusing defense counsel's request to question Mr. Ackley about these extraneous matters.

 By the same token, defense counsel's attempt to cross-examine Trooper Garrett in regard to the date upon which he first spoke to Mr. Ackley was also correctly disallowed. No testimony was elicited by the State as to Trooper Garrett's conversation with Mr. Ackley. The statement was not introduced by the State, but was, as previously noted, introduced by the defense to impeach Mr. Ackley. Defense counsel asserts no theory of relevancy nor specifies any harm that was occasioned by the court's ruling. We find no error.

### III.

 Mr. Green asserts that the trial court erred in allowing Wanda Ackley [1] to testify, because the prosecution had not disclosed its intention to offer her testimony until the day she was called. The prosecution claimed that Mrs. Ackley had not come forward until the night before she testified because she was afraid of the defendant. Mr. Green's counsel objected to the introduction of her testimony on the basis of failure to disclose. The trial judge allowed her testimony, but only after first affording the defense an opportunity to interview her. On the stand, Mrs. Ackley testified that she had found a receipt indicating that Mr. Green had traded a car to Billy Barker for the Gravely tractor. She also testified that she asked Mr. Green about the receipt and that he stated he had obtained it to avoid any trouble. She further testified that she had put the receipt in her purse and that Mr. Green found it and burned it.

Rule 16(a)(1)(E) of the West Virginia Rules of Criminal Procedure requires disclosure, upon request of the defendant, of the names and addresses of all witnesses the State intends to call as part of its case-in-chief. This duty continues throughout the course of the trial; the State must disclose any additional witnesses as soon as they are discovered. W.Va.R.Crim.P. 16(c).

 The disclosure of newly discovered witnesses at the last minute is governed by the test contained in the Syllabus of *State v. Hager*, 176 W.Va. 313, 342 S.E.2d 281 (1986), where we stated:

"Where the State is unaware until the time of trial of material evidence which it would be required to disclose under a Rule 16 discovery request, the State may use the evidence at trial provided that: (1) the State discloses the information to the defense as soon as reasonably possible; and (2) the use of the evidence at

---

1. Wanda Ackley, the wife of Ralph Ackley, was previously married to Mr. Green. She testified at trial to an event which occurred while she was married to Mr. Green. No issue was raised about her competency to testify against her former husband. *See* W.Va.Code, 57–3–3 (1923).

trial would not unduly prejudice the defendant's preparation for trial."

The State's presentation of Mrs. Ackley's testimony passes the procedural aspect of this test. Mrs. Ackley came forward the evening after the first day of the trial. The next morning, as soon as proceedings reconvened in the trial judge's chambers, the State offered a supplemental statement of disclosure to the court and the defendant. This is certainly "as soon as reasonably possible," as required by *Hager*.

■■■ Mr. Green argues that he was prejudiced by the State's failure to disclose. We find that any potential prejudice has not reached the level of harm contemplated by *Hager*. We have previously set forth the test to determine whether nondisclosure is prejudicial. As we stated in Syllabus Point 4 of *State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987):

"Our traditional appellate standard for determining whether the failure to comply with court-ordered pretrial discovery is prejudicial is contained in Syllabus Point 2 of *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980). This was evolved prior to the adoption of our Rules of Criminal Procedure, but is applied to Rule 16 discovery."

We quoted Syllabus Point 2 of *Grimm* at Syllabus Point 2 of *Miller*:

" 'When a trial court grants a pretrial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.' Syllabus Point 2, *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980)."

Based on these articulated standards, we do not find Mrs. Ackley's testimony to have been prejudicial to Mr. Green's case. Her testimony related to the charge of grand

larceny. As Mr. Green was acquitted on that charge, we only review the conspiracy charge. As noted in Section IV, *infra*, on a conviction for conspiracy to commit grand larceny, it is not necessary to show that the defendant actually stole the tractor. Because of the immateriality of Mrs. Ackley's testimony, we find that Mr. Green's case was not hampered, and, therefore, there is no error on this ground.

## IV.

■■ Counsel for Mr. Green twice moved for judgment of acquittal, first, on the conspiracy charge only at the close of the State's evidence, and again on all charges at the close of all the evidence.[2] These motions were based on insufficiency of the evidence and inconsistency of the verdicts. He assigns denial of these motions as error. Again, we find this to be without merit.

■■■ We set down the standard for appellate review of sufficiency of the evidence in a criminal case in Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), where we stated:

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

■■■ The requisite showing for a conspiracy conviction was articulated in Syllabus Point 4 of *State v. Less*, 170 W.Va. 259, 294 S.E.2d 62 (1981):

"In order for the State to prove a conspiracy under *W.Va.Code*, 61–10–

---

**2.** Mr. Green also asserts on appeal that he moved for a judgment of acquittal or a new trial after the jury verdicts. Although his stated intention to do so is part of the trial transcript, the claimed motion is not part of the record before us.

31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy."

In the text of the opinion in *Less,* the Court noted that "[t]he agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement." 170 W.Va. at 265, 294 S.E.2d at 67. (Citations omitted).

Viewing the evidence in the light most favorable to the prosecution, the jury was warranted in finding that Mr. Green had participated in a conspiracy to steal the tractor. There is no question that the State had sufficient evidence to show that the tractor was stolen. Mr. Ackley testified that Mr. Green and Billy Barker left one evening and returned the next day with the tractor. From this, the jury could infer an agreement or arrangement to steal the tractor. There was also substantive evidence that Mr. Green had disposed of it. Thus, we find that the evidence was manifestly adequate to support the verdict.

■ Mr. Green also based his motions for a judgment of acquittal on inconsistency of the verdicts. We find this to be unconvincing as well. We addressed the problem of inconsistent verdicts in *State v. Hall,* 174 W.Va. 599, 328 S.E.2d 206 (1985), noting that such inconsistency is generally not subject to appellate review. We quoted the policy reasons for this principle articulated by the United States Supreme Court in *United States v. Powell,* 469 U.S. 57, 68–69, 105 S.Ct. 471, 479, 83 L.Ed.2d 461, 471 (1984):

" '[I]f inconsistent verdicts are nevertheless reached those verdicts still are likely to be the result of mistake, or lenity.... Given this impasse, the factors detailed above—the Government's inability to invoke review, the general reluctance to inquire into the workings of the jury, and the possible exercise of lenity—suggest that the best course to take is simply to insulate jury verdicts from review on this ground.' " 174 W.Va. at 603, 328 S.E.2d at 211.

We noted that this rule does not apply in situations " 'where a guilty verdict on one count logically excludes a finding of guilt on the other.' " 174 W.Va. at 603, 328 S.E.2d at 211, *quoting United States v. Powell,* 469 U.S. at 69 n. 8, 105 S.Ct. at 479 n. 8, 83 L.Ed.2d at 471 n. 8.

In this case, the guilty verdict on one count does not logically exclude a guilty verdict on the other. Based on Mr. Green's testimony that he did not steal the tractor, the jury was warranted in finding that he did not actually steal it and in acquitting him of the grand larceny charge. However, as discussed above, there was adequate evidence to convict him of conspiracy.

## V.

■ Finally, Mr. Green assigns "[a]ll other errors apparent from the record." We decline to identify and address any such errors. It is well established, as we stated in Syllabus Point 6 of *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981):

"Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."

*See also Quackenbush v. Quackenbush,* 159 W.Va. 351, 222 S.E.2d 20 (1976); *Higginbotham v. City of Charleston,* 157 W.Va. 724, 204 S.E.2d 1 (1974), *overruled on other grounds, O'Neil v. City of Parkersburg,* 160 W.Va. 694, 237 S.E.2d 504 (1977).

For the foregoing reasons, the judgment of the Circuit Court of Calhoun County is affirmed.

Affirmed.